SULZBERGER v. MISHKE.

SPECIFIC PERFORMANCE—FRAUD NOT SHOWN—VENDOR AND PUR-
CHASER.

In a suit by the vendee for the specific performance of a
land contract, where the vendor alleged that the vendee had
fraudulently paid a sum of money to vendor's son-in-law to
induce vendor to sign the contract, evidence showing that
vendor did not rely on his son-in-law in making the contract,
that no fraud had been perpetrated upon him, that he was in
no way prejudiced, and that under the contract he will get
the price fixed by him, *held*, to justify the decree of the court
below in favor of plaintiff.

Appeal from Wayne; Lamb (Fred S.), J., presid-
ing. Submitted February 1, 1929. (Docket No. 160,
Calendar No. 34,202.) Decided March 29, 1929.

Bill by Mayer B. Sulzberger and another against
Michael Mishke for specific performance of a land
contract. From decree for plaintiffs, defendant ap-
peals. Affirmed.

*Harold Goodman*, for plaintiffs.

*Lightner, Oxtoby, Hanley & Crawford*, for de-
fendant.

SHARPE, J. On January 23, 1925, Sulzberger,
hereafter called the plaintiff, and the defendant en-
tered into a written contract for the sale by the de-
fendant to the plaintiff of certain land in Wayne
county, specifically described, at the price of $2,000
per acre, of which $500 was then paid and the pay-
ment of the balance agreed upon therein. It con-

tained a provision that the performance of the contract should be contingent upon the defendant's securing a final decree in his favor in a suit then pending, wherein he was seeking the cancellation of an option that he had given to the Eddy Realty Company. That suit was decided adversely to the defendant herein in the circuit court, but, on appeal to this court, the decree entered was reversed on February 14, 1928, and the option canceled. *Mishke* v. *Eddy Realty Co.*, 241 Mich. 501.

On March 14, 1928, plaintiff filed the bill of complaint herein to compel specific performance. In his answer, filed on April 20, 1928, defendant averred that his promise to convey was contingent upon the result of the suit in the circuit court, and not upon the final decree rendered in this court. On October 16, 1928, a few days before the hearing, he obtained permission to and did file an amended answer, in which he set up in his defense that in order to secure said contract plaintiff had fraudulently paid to Charles A. Schneider, a son-in-law of defendant, the sum of $600 as a consideration for his inducing defendant to execute the same, and that such action voided said contract, and he should not be required to perform the same. After a hearing, in which the proofs were taken in open court, the trial court found that defendant in no way relied upon Schneider in the making of the contract; that he was not defrauded in any way, and granted the relief prayed for. Defendant appeals.

The plaintiff testified that at the suggestion of a man whom he saw at the house on the property, he went to see defendant's attorney, Mr. Benjamin, and inquired about the property; that he was told the price was $2,000 an acre; that he later met Charles Schneider and his brother Frank in the at-

torney's office; that they said to him that in order
for him to get the property he must pay them some
money; that Frank had another deal pending and
could get $600 out of it; that he left them and in-
quired of the attorney "what kind of a holdup game
is this with these two fellows?" and, on advising
him of what the Schneiders had said, that the attor-
ney said he could do nothing, but advised him to pay
it as it seemed "to be the only way you can get the
property," and that when the contract was delivered
to him the next day he gave the attorney a check for
the $500, payable to defendant, and one to Frank W.
Schneider, payable to his order, for $600. The con-
tract was drawn by the attorney and taken to de-
fendant for execution by Joseph W. Haubner, who
testified that he took with him a letter from the at-
torney, addressed to defendant, reading as follows:

"I have prepared papers and they are drawn up
so as to protect you from the Eddy Realty Company
option, and also keeping your home and one acre of
land around it. If you are satisfied with the deal,
sign papers."

This witness testified that Charles Schneider was
then present; that defendant said nothing about Mr.
Schneider, but "asked if I was from Mr. Benjamin's.
* * * He asked me whether Mr. Benjamin thought
it was all right." On cross-examination, he stated
that defendant was somewhat reluctant about sign-
ing it, but later said it was not on account of the
price, but he wanted to be sure that Mr. Benjamin
had sent him. Attached to the contract was an ac-
knowledgment, signed by defendant, stating that
Charles A. Schneider had made the sale and was en-
titled to a five per cent. commission upon the execu-
tion of the deed and mortgage provided for therein,

There is much dispute in the testimony. The defendant, called by plaintiff for cross-examination, testified:

"At that time my affairs were being handled by Mr. Benjamin. * * *

"Q. Do you think Charlie is a pretty good real estate man?

"A. I don't know anything about Charlie's business. I don't think I would trust Charlie to sell my farm for me."

After relating what occurred when the contract was brought to him for his signature, he further testified:

"Q. When they told you that Charlie Schneider wasn't your agent, was he?

"A. Well, he come with the option out, he told me.

"Q. He just came with the option at the time, he told you?

"A. Yes.

"Q. You didn't tell him you wanted to sell the property before that, did you?

"A. No, I didn't, no. * * *

"Q. * * * You depended on Mr. Benjamin, didn't you? You didn't depend on Charlie, did you?

"A. No, I never depend on Charlie."

He further testified:

"The amount of money that I was getting, $2,000 an acre, was all right, if I win that case it would have been all right. * * * I was satisfied with the price.

"Q. You didn't tell Charlie to get to work and sell the land, did you?

"A. No, I did not; no, I didn't; I didn't. * * *

"Q. The reason you didn't talk much to Charlie

Schneider about that was, you really didn't trust Charlie?

"*A.* I never trust Charlie."

The testimony of Charles Schneider is inconsistent in many respects with the admitted facts. He testified that he made the deal with plaintiff in plaintiff's office, and yet plaintiff at that time had no office down town in the city. He testified that the $600 belonged to him and that he directed plaintiff to hand the check to his brother Frank, when it is not disputed that plaintiff had at that time drawn the check and made it payable to Frank. Frank was not called as a witness. Mr. Benjamin, while admitting that plaintiff called on him and that he prepared the contract, denied all knowledge of plaintiff's deal with the Schneiders.

The trial court saw the witnesses and heard them testify. He concluded that defendant was satisfied with the terms of the contract, and that no fraud had been perpetrated upon him in securing its execution. If Charles was his agent to sell the property, it quite clearly appears that he used no influence to secure the execution of the contract. The $600 was paid to Frank to stop the deal he claimed he then had pending with another party. While we do not approve of the action of the plaintiff in making this payment, we are satisfied that the defendant was in no way prejudiced thereby. He will get, under the terms of the contract, the price fixed by him, and will lose nothing by its enforcement.

The decree is affirmed, with costs to appellees.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, MCDONALD, and POTTER, JJ., concurred.